

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann

~~XXXX XXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable L. L. Geren
County Attorney
Limestone County
Groesbeck, Texas

Dear Sir:

Opinion No. O-4830
Re: Can the county budget now be
legally amended to include ob-
ligations incurred prior to the
adoption of the amendment, and
related questions ?

We acknowledge receipt of your request for the opinion of this department on the questions stated therein, and quote from your letter as follows:

"The County Auditor of Limestone County has requested an opinion on the following matter and I hereby ask your advice on same:

"Limestone County is divided into four road precincts and the motor registration and ad valorem tax money was equally divided between the four precinct funds for the year 1942. The anticipated receipts for this year on this fund is estimated at $80,-000.00 and under order of the Commissioners Court apportioning the money equally, each precinct was allotted an estimated $20,000.00 for its Road and Bridge Fund.

"Precinct No. 1 owes $76,277.56 in outstanding scrip against its Road and Bridge Fund. Precinct No. 2 owes $123,362.71; Precinct 3 owes $97,749.30 and Precinct No. 4 operates on a cash basis.

"The budget of the Commissioners Court for the year 1942 allotted $20,000.00 to each precinct fund to which is added the gasoline tax refund money.

"In order to simplify the matter and show the actual condition of these funds I am appending hereto 'Exhibit A' which contains a clear statement of the funds in question.

"You will note from an examination of this exhibit that Precinct No. 1 had total estimated budget receipts for 1942 of $20,252.79, issued scrip for $15,163.-86, has interest this year estimated at $4,780.02, has paid $1,924.74 in interest and has interest due estimated at $2,855.26. The Commissioners Court has approved bills on this precinct for $3,956.65 and the County Auditor has refused to issue scrip for this and the other precincts unless you rule that he can legally do so. This fund is over the budget $4,093.73 if you count estimated interest due.

"In past years the persons who have held the position of County Auditor have not kept a record of the amount of scrip issued that bore interest, nor has the County Treasurer, hence it is impossible for the present Auditor to set out accurately the amount of interest due and he must, of necessity, estimate it.

"The Auditor estimates the amount of interest due on Precinct No. 2 at $6,000.00. He has paid $2,524.-24 interest already and this leaves a balance of $3,475.76. Counting this estimated interest due, Precinct No. 2's Road and Bridge Fund has spent $1,729.43 in excess of the budget.

"For Precinct No. 3 there is estimated interest due of $6,000.00 of which he has paid $1,047.60, leaving an estimated balance due of $4,952.40. Counting the estimated interest due Precinct No. 3's Road and Bridge Fund has spent $3,857.33 in excess of the budget.

"If you do not include the estimated interest due then Precinct No. 1 has expended $1,238.47 in excess of the budget and of the estimated receipts for the year 1942.

"Prior to incurring any of these expenditures in excess of the estimated receipts the County Auditor warned the Commissioners of Precincts 1, 2 and 3 that any debts they incurred would be in excess of the budget and therefore illegal. Nevertheless the Commissioners incurred the obligations. Although there have been no unprecedented rains and storms than usually occur each year, the court declared an emergency on this basis. Of course this presents a difficult situation because every year we do have rains that wash out bridges and damage roads.

"The Commissioners Court, upon the refusal of the County Auditor to pay off the obligations amended the budget with the following order:

" 'Whereas, it is necessary to amend the budget for 194⊄ insofar as same relates to Commissioners Precincts and/or Road & Bridge Fund #1, Road & Bridge Fund #2, Road & Bridge Fund #3, for the reason that an emergency exists and did exist during the first eight months of this year and that it was a case of grave public necessity to meet unusual and unforeseen conditions which could not, by reasonable diligent thought and attention, have been included in the original budget for 1942, in that by reason of an act of God, there was much rain and overflows, and the roads and bridges were damaged to an extent that it was necessary for Commissioners Precinct #1, to exceed the budget in the sum of $3,900.00; Commissioners Precinct No. 2 to exceed the budget in the sum of $1,500.00; and Commissioners Precinct No. 3, to exceed the budget in the sum of $4,606.00; and by reason of said emergency expenditures to meet unusual and unforeseen conditions which could not by reasonable diligent thought and attention have been included in the original budget; On motion made by Herman Adams and seconded by Wess Popejoy, all members of the court voting in favor of said motion, it is ordered that the Budget for 1942 be amended so that Road & Bridge Fund #1, will be increased $3,900.00; Road & Bridge Fund #2 will be increased $1,500.00; and Road & Bridge Fund #3, will be increased $4,606.00.'

"From this order you can readily see that the budget is being amended in the approximate sum of $10,000.00 to care for past obligations.

"We wish to know the following:

"(1) Can the budget now be amended to make legal, obligations incurred prior to the adoption of the amended budget?

"(2) Must the County Auditor include the estimated interest due in computing the expenditures under the budget?

"(3) Can the Commissioners spend money in excess of their anticipated receipts for the year 1942?

"(4) Is the order of the Commissioners Court amending the budget valid?

"  . . . . "

Article 689a-9, Vernon's Annotated Civil Statutes, provides for the preparation of the County budget. Article 689a-11, Vernon's Annotated Civil Statutes provides in part:

" . . . When the budget has been finally approved by the Commissioners' Court, the budget, as approved by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the Court. Except that emergency expenditures, in case of grave public necessity, to meet unusual and unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget, may from time to time be authorized by the Court as amendments to the original budget. . . . "

Article 689a-20, Vernon's Annotated Civil Statutes, provides:

"Nothing contained in this Act shall be construed as precluding the Legislature from making changes in the budget for State purposes or prevent the County Commissioners' Court from making changes in the budget for county purposes or prevent the governing body of any incorporated city or town from making changes in the budget for city purposes, or prevent the trustees or other school governing body from making changes in the budgets for school purposes; and the duties required by virtue of this Act of State, County, City and School Officers or Representatives shall be performed for the compensation now provided by law to be paid said officers respectively."

This department has repeatedly ruled that the commissioners' court of a county is without authority to make any expenditure of funds of the county except in fixed compliance with the budget, except emergency expenditures in case of grave public necessity, as outlined by Section 11 of Article 689a, supra. This department has also repeatedly ruled that Section 20, of Article 689a, supra, does not authorize the commissioners' court to increase the budget after its adoption and that to hold otherwise would destroy the very purpose of the act.

Article 689a-9, Vernon's Annotated Civil Statutes, provides, in part:

"... The budget shall also contain a complete
financial statement of the county, showing all outstand-
ing obligations of the county, the cash on hand to the
credit of each and every fund of the county government,
the funds received from all sources during the previous
year, the funds available from all sources during the en-
suing year, the estimated revenues available to cover
the proposed budget and the estimated rate of tax which
will be required."

As we understand your first question, you desire to have our
opinion on the following question: Can the county budget now be legally
amended to include obligations incurred prior to the adoption of said amend-
ment? In answer to this question, it is our opinion that the county budget
cannot now be legally amended to include obligations incurred prior to
the adoption of said amendment. In other words, the commissioners'
court had no legal authority to incur any obligations or make any ex-
penditures of county funds except in fixed compliance with the county bud-
get, except emergency expenditures in case of grave public necessity, as
outlined by Section 11 of Article 689a, supra. Said provision (Sec. 11,
Art. 689a) does not authorize the expenditure of county funds or the incur-
ring of obligations which are to be paid out of current revenues without
first amending the county budget in compliance with the above mentioned
statute.

As we understand your second question, you have reference
to interest on obligations owed by the county as interest by the various
commissioners' precincts. Under the facts stated, it is apparent that the
interest due is interest on script issued by the county for the various com-
missioners' precincts. It is to be understood that we are not passing upon
the question as to whether or not the county can legally pay interest on
such script in this opinion. However, assuming that such interest can
legally be paid it is our opinion that the county auditor must include the
interest paid in computing the expenditures under the budget. With ref-
erence to the interest due and unpaid, the county auditor must include
this in computing the legal expenditures to be made under the budget,
provided, claims for such interest are duly registered as required and
authorized by Article 1626 and 1627, Vernon's Annotated Civil Statutes.

In connection with the foregoing we direct your attention to
the case of Wilkinson vs. Franklin County, 94 S.W. (2nd) 1190, wherein it
is stated:

"Article 1625, R.S., plainly denotes the order in
which warrants drawn against the county treasury are to
be paid, and amounts to an appropriation of the funds in
the county treasurer to the payment of all warrants legal-
ly drawn against the several classes of funds in the order
of their registration. And the order of the commissioners'
court of Franklin county of July 13, 1934, requiring the

county treasury first to pay current warrants drawn
against the county general fund ahead of senior regis-
tration warrants drawn against said fund is violative
of article 1625, R.S., and is therefore void." (Also
see the case of Clarke & Courts v. Panola County,
161 S.W. (2d) 148)

What was said above with reference to the registration of
claims for interest due, is equally applicable to all other claims against
said fund or funds and such claims must be paid in the order of their reg-
istration.

We now consider your third question. This is a general
question and therefore, our answer must be general. The term "debt" as
used in the constitutional provision requiring that special provision be
made for paying the obligation, has a technical meaning. The term has
been defined as comprehending any pecuniary obligation imposed by con-
tract, except such as is at the date of the agreement, within the lawful
and reasonable contemplation of the parties, to be satisfied out of the
current revenues for the year, or out of some fund then within the im-
mediate control of the commissioners' court. Debts for the ordinary
running expense of the county, payable within a year out of the incoming
revenues of the year, and with other indebtedness not clearly in excess of
the yearly income for general purposes are not within the purview of the
constitutional provision, and may be lawfully created without the making
of special provision for their payment.

If, at the time when the contract is made, it is contemplated
that any part of the purchase price will be paid from taxes levied and col-
lected for future years, the contract falls within the prohibitive class.
But the debt will be held valid without special provision for payment where
it appears that the parties intended that payment should be made from cur-
rent funds, and that, in the reasonable contemplation of the parties, there
is sufficient money within the immediate control of the county to discharge
the indebtedness or that there was a reasonable expectation of collecting
the money out of taxes legitimately levied for such purposes, although
payment was not made from the current funds available. On the other
hand, where the contract creating the debt contemplates that payment
shall be made out of funds of future years, the contract will not be con-
strued as creating a debt upon the current funds payable in future years,
even though a sufficient fund was on hand at the date when such contract
was made. (The Austin Brothers vs. Montague County, 291 S.W. 628, re-
versed on other points 10 S.W. (2nd) 718; Texas Jurisprudence, Vol. 11,
Page 671, authorities cited)

It will be noted from the foregoing that the commissioners'
court can incur obligations in excess of their anticipated receipts where
a debt has been created and provisions for payment of the same are made
in compliance with the constitutional provision requiring that special pro-
vision be made for paying the obligation. However, obligations cannot be

made where it appears that the parties intended that payment should be made from current funds and said obligation or obligations exceed the anticipated receipts of current funds.

With reference to your fourth question, generally speaking, after the county budget has been finally approved by the county commissioners' court, said court would not be authorized to amend the original budget, unless the expenditures set out in the amendment to the budget were emergency expenditures, and were caused and necessitated by grave public necessity to meet unusual and unforeseen conditions which could not, by reasonable diligence, and attention have been included in the original budget. However, under the facts presented, the obligations in question were incurred prior to any amendment of the county budget, and as above stated in answer to your first question, it is our opinion that the county budget cannot now be legally amended to include such obligations. Therefore it is our opinion that the order of the commissioners' court, as quoted above, amending the county budget is invalid.

In connection with the foregoing, we want to point out that the discretion of the commissioners' court is not absolute authority to expend county funds in the case of an emergency, and is final, only where the question is debatable or where the existence of an emergency is unquestionable. However, said court has no authority to determine that an emergency exists, and expend county funds therefore, where the facts clearly show the contrary. Said court has no legal authority to declare an emergency and evade the law, where in fact, no emergency exists.

Opinions Nos. 0-1022 and 0-1053 of this department contain discussions of the budget law. Opinion No. 0-1053 defines the terms "grave" and "public necessity". Opinions Nos. 0-1053 and 0-1022 hold that the question of "grave public necessity" is a fact question to be determined primarily by the commissioners' court.

We enclose copies of these opinions for your convenience.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ardell Williams
Ardell Williams
Assistant

AW:ff/cm
Encl.

APPROVED OCT 29, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion
Committee
By BWB
Chairman